Francis J. "Casey" Flynn, Jr. #304712
**LAW OFFICES OF FRANCIS J. FLYNN, JR.**
6057 Metropolitan Plz.
Los Angeles, CA 90036
Tele: 314-662-2836
Email: casey@lawofficeflynn.com

MaryBeth V. Gibson**
** to seek admission Pro Hac Vice
**THE FINLEY FIRM, P.C.**
Piedmont Center
3535 Piedmont Road
Building 14, Suite 230
Atlanta GA 30305
Tele: (404) 978-6971
Facsimile: (404) 320-9978

*Attorneys for Plaintiff and the Proposed Class*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TIMOTHY DURHAM, individually and on behalf of all others similarly situated,<br><br>　　　　Plaintiff,<br>　v.<br><br>CABELA'S LLC,<br><br>　　　　Defendant. | Case No.: 2:23-cv-1630<br><br>**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF FOR VIOLATIONS OF:**<br><br>**(1) UNLAWFUL WIRETAPPING AND INTERCEPTION OF ELECTRONIC COMMUNICATION CALIFORNIA PENAL CODE §§ 630-638;** |

-1-
CLASS ACTION COMPLAINT

4862-9371-6049, v. 1

**(2) VIOLATIONS OF ELECTRONIC COMMUNICATIONS PRIVACY ACT  18 U.S.C. § 2511(1) et seq.**

**(3) VIOLATION OF ELECTRONIC COMMUNICATIONS PRIVACY ACT UNAUTHORIZED DIVULGENCE BY ELECTRONIC COMMUNICATIONS SERVICE, 18 U.S. Code § 2511(3)(a)**

**(4) VIOLATION OF TITLE II OF THE ELECTRONIC COMMUNICATIONS PRIVACY ACT, 18 U.S.C. § 2701 *et seq.***

**(5) VIOLATION OF TITLE II OF THE ELECTRONIC COMMUNICATIONS PRIVACY ACT, 18 U.S.C. § 2702, *et seq.***

**(6) VIOLATION OF THE COMPUTER FRAUD AND ABUSE ACT (CFAA), 18 U.S.C. § 1030, *et seq.***

**(7) STATUTORY LARCENY, CALIFORNIA PENAL CODE §§ 484 AND 496**

**(8) VIOLATION OF THE UNFAIR COMPETITION LAW, CAL. BUS. & PROF. CODE SECTIONS 17200, ET SEQ.**

**(9) TRESPASS TO CHATTELS**

**(10) CONVERSION**

-2-
CLASS ACTION COMPLAINT

4862-9371-6049, v. 1

**CLASS ACTION**

**DEMAND FOR JURY TRIAL**

Plaintiff TIMOTHY DURHAM ("Plaintiff"), individually and on behalf of all others similarly situated, by and through Plaintiffs' undersigned counsel, bring this class action lawsuit against CABELA'S LLC ("Defendant" or "Cabela's") and alleges, based upon information and belief and the investigation of Plaintiff's counsel as follows:

**JURISDICTION AND VENUE**

1.    Jurisdiction is proper under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d)(2), because Plaintiff, a resident of the State of California, seeks relief on behalf of (1) a national class and (2) a California subclass, which will result in at least one Class Member belonging to a different state than Defendant, a Delaware Corporation with its principal place of business in Nebraska.  Plaintiff is requesting statutory damages of the greater of $10,000 or $100 per day for each violation of 18 U.S.C. §2510 *et seq.* and $2,500 per violation of Cal. Penal Code §631, which when aggregated among a proposed class number in the hundreds of thousands, exceeds the $5,000,000 threshold for federal court jurisdiction under CAFA. Therefore, both diversity jurisdiction and the damages threshold under CAFA are present, and this Court has jurisdiction. This Court further has subject

4862-9371-6049, v. 1

matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action arises under 18 U.S.C. § 2510, *et seq.*, 18 U.S.C. § 2701, *et seq.*, and 18 U.S.C. § 1030, *et seq.*, and this Court has supplemental jurisdiction over the remaining state law claims pursuant to 28 U.S.C. § 1367 because the state law claims form part of the same case or controversy under Article III of the United States Constitution.

2.     Because Defendant conducts business within the State of California, personal jurisdiction is established.  Furthermore, this Court has personal jurisdiction over Defendant because a substantial part of the events and conduct giving rise to Plaintiff's claims occurred in California. The privacy violations complained of herein resulted from Defendant's purposeful and tortious acts directed towards citizens of California while they were located within California. Defendant markets its products online via its website and ships products to California residents—*i.e.*, Defendant intends for California residents to purchase its products online and, in turn, delivers its products to California.  During this process, Plaintiff alleges Defendant surreptitiously intercepted and wiretapped Plaintiff's Electronic Communications on its website while Plaintiff and Class Members were located in California. At all relevant times, Defendant knew that its practices would directly result in collection of information from California citizens while those citizens browse www.cabelas.com. Defendant chose to avail itself of the business opportunities of marketing and selling its goods in California and collecting real-

4862-9371-6049, v. 1

time data from website visit sessions initiated by Californians while located in California, and the claims alleged herein arise from those activities.

3.     Venue is proper pursuant to 28 U.S.C. § 1391 for the following reasons: (i) the conduct complained of herein occurred within this judicial district; and (ii) Defendant conducted business within this judicial district at all times relevant.

## INTRODUCTION

4.     Timothy Durham ("Plaintiff"), individually and on behalf of all other similarly situated consumers ("Class Members"), brings this action for damages and injunctive relief against CABELA'S LLC ("Defendant"), and its present, former, or future direct and indirect parent companies, subsidiaries, affiliates, agents, related entities for violations of the Federal Wiretap Act, 18 U.S.C. § 2510 *et seq* (the "Wiretap Act"); Unlawful Wiretapping And Interception Of Electronic Communication California Penal Code §§ 630-638; Violations Of  Electronic Communications Privacy Act  18 U.S.C. § 2511(1) *et seq*.; Violation Of Electronic Communications Privacy Act Unauthorized Divulgence By Electronic Communications Service, 18 U.S. Code § 2511(3)(A); Violation of Title II of the Electronic Communications Privacy Act, 18 U.S.C. § 2701 *et seq*.; Violation Of Title II of the Electronic Communications Privacy Act, 18 U.S.C. § 2702, *et seq*.; Violation Of The Computer Fraud And Abuse Act (CFAA), 18 U.S.C. § 1030, *et seq*.; Statutory Larceny, California Penal Code §§ 484 and 496; Violation of the

4862-9371-6049, v. 1

Unfair Competition Law, Cal. Bus. & Prof. Code Sections 17200, *et seq*.; Trespass to Chattels; and Conversion in relation to the unauthorized interception, collection, recording, and dissemination of Plaintiff's and Class Members' communications and data.

5.    The California State Legislature passed CIPA to protect the right of privacy of the people of California. The California Penal Code is very clear in its prohibition against unauthorized taps or connections without the consent of the other person:

> Any person who, by means of any machine, instrument, or contrivance, or any other matter, intentionally taps, or makes any unauthorized connection . . . with any telegraph or telephone wire, line, cable, or instrument, including the wire, line, cable. Or instrument of any internal telephonic communication system, or who willfully and without consent of all parties to the communication, or in any unauthorized manner, reads, or attempts to read, or to learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line, or cable, or is being sent from, or received at any place within this state [violates this section].

Cal. Penal Code § 631(a).

6.    This case stems from Defendant's unauthorized interception and

CLASS ACTION COMPLAINT

4862-9371-6049, v. 1

connection to Plaintiff's and Class Members' electronic communications through the use of "session replay" spyware that allowed Defendant to read, learn the contents of, and make reports on Plaintiff's and Class Members' interactions on Defendant's website.

7.     Plaintiff also brings this action for every violation of California Penal Code § 631 which provides for statutory damages of $2,500 for each violation, pursuant to California Penal Code § 631(a).

8.     As discussed in detail below, Defendant utilized "session replay" spyware to intercept Plaintiff's and the Class Members' electronic computer-to-computer data communications, including how Plaintiff and Class Members interacted with the website, finger or mouse movements and clicks, keystrokes, search items, information inputted into the website, and pages and content viewed while visiting the website. Defendant intentionally tapped and made unauthorized interceptions and connections to Plaintiff and Class Members' electronic communications to read and understand movement on the website, as well as everything Plaintiff and Class Members did on those pages, e.g., what Plaintiff and Class Members searched for, looked at, the information inputted, and clicked on.

9.     Defendant made these unauthorized interceptions and connections without the knowledge or prior consent of Plaintiff or Class Members.

10.     The "session replay" spyware utilized by Defendant is a sophisticated

-7-
CLASS ACTION COMPLAINT

computer software that allows Defendant to contemporaneously intercept, capture, read, observe, re-route, forward, redirect, and receive Plaintiff's and Class Members' electronic communications.

11.    "Technological advances[,]" such as Defendant's use of "session replay" technology, "provide 'access to a category of information otherwise unknowable' and 'implicate privacy concerns' in a manner different from traditional intrusions as a 'ride on horseback' is different from a 'flight to the moon.'" *Patel v. Facebook, Inc*., 932 F.3d 1264, 1273 (9th Cir. 2019) (quoting *Riley v. California*, 573 U.S. 373, 393 (2014)).

12.    Jonathan Cherki, the CEO of a major "session replay" spyware company – while discussing the merger of his company with another "session replay" provider – publicly exposed why companies like Defendant engage in learning the contents of visits to their websites: "The combination of Clicktale and Contentsquare heralds an unprecedented goldmine of digital data that enables companies to interpret and predict the impact of any digital element – including user experience, content, price, reviews and product – on visitor behavior[.]"[1] Mr. Cherki added that, "this unique data can be used to activate custom digital experiences in the moment via an ecosystem of over 50 martech partners. With a global community of customers and partners, we are accelerating the interpretation of human behavior

4862-9371-6049, v. 1

online and shaping a future of addictive customer experience." [1]

13.    Unlike typical website analytics services that provide aggregate statistics, the session replay technology utilized by Defendant is intended to record and playback individual browsing sessions, as if someone is looking over Plaintiff's or a Class Member's shoulder when visiting Defendant's website. The technology also permits companies like Defendant to view the interactions of visitors on Defendant's website live, in real-time.

14.    The purported use of "session replay" technology is to monitor and discover broken website features; however, the extent and detail collected by users of the technology, like Defendant, far exceeds the stated purpose and Plaintiff's and Class Members' expectations when visiting websites like Defendant's. The technology not only allows the tapping and unauthorized connection of a visitor's electronic communication with a website, but also allows the user to create a detailed profile for each visitor to the site.

15.    Moreover, the collection and storage of page content may cause sensitive information and other personal information displayed on a page to lead to third parties. This may expose website visitors to identity theft, online scams, and other unwanted behavior.

---

[1] https://www.prnewswire.com/news-releases/contentsquare-acquires-clicktale-to-create-the-definitive-global-leader-inexperience-analytics-300878232.html.

CLASS ACTION COMPLAINT

4862-9371-6049, v. 1

16.    In 2019, Apple warned application developers using "session replay" technology that they were required to disclose such action to their users, or face being immediately removed from the Apple Store: "Protecting user privacy is paramount in the Apple ecosystem. Our App Store Review Guidelines require that apps request explicit user consent and provide a clear visual indication when recording, logging, or otherwise making a record of user activity."[2]

17.    Consistent with Apple's concerns, countless articles have been written about the privacy implications of recording user interactions during a visit to a website, including:

a)    The Dark Side of 'Replay Sessions' That Record Your Every Move Online, located at https://www.wired.com/story/the-dark-side-of-replay-sessionsthat-record-your-every-move-online/;

b)    Session-Replay Scripts Disrupt Online Privacy in a Big Way, located at https://www.techrepublic.com/article/session-replay-scripts-are-disruptingonline-privacy-in-a-big-way/;

c)    Are Session Recording Tools a Risk to Internet Privacy? located at https://mopinion.com/are-session-recording-tools-a-risk-to-internet-privacy;

d)    Session Replay is a Major Threat to Privacy on the Web, located at

---

[2] https://techcrunch.com/2019/02/07/apple-glassbox-apps

CLASS ACTION COMPLAINT
4862-9371-6049, v. 1

https://www.itnews.com.au/news/session-replay-is-a-major-threat-toprivacy-on-the-web-477720;

e)    Popular Websites Record Every Keystroke You Make and Put Personal Information and Risk, located at https://medium.com/strongercontent/popular-websites-record-every-keystroke-you-make-and-putpersonal-information-at-risk-c5e95dfda514; and

f)    Website Owners can Monitor Your Every Scroll and Click, located at https://www.digitalinformationworld.com/2020/02/top-brands-and-websitescan-monitor-your-every-scroll-and-click.html

18.    In sum, Defendant illegally tapped, made an unauthorized connection to, and intercepted Plaintiff's and Class Members' electronic communications through visits to Defendant's website, causing injuries, including violations of Plaintiff's and Class Members' substantive legal privacy rights under the Wiretap Act and CIPA.

19.    Plaintiff makes these allegations on information and belief, with the exception of those allegations that pertain to Plaintiff, or to Plaintiff's counsel, which Plaintiff alleges on personal knowledge.

20.    Unless otherwise stated, all the conduct engaged in by Defendant took place in California.

21.    All violations by Defendant were knowing, willful, and intentional, and

-11-

CLASS ACTION COMPLAINT

4862-9371-6049, v. 1

Defendant did not maintain procedures reasonably adapted to avoid any such violation.

22.    Unless otherwise indicated, the use of Defendant's name in this Complaint includes all agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers of the named Defendant.

## PARTIES

23.    Plaintiff is, and at all times mentioned herein, was a natural person and resident of the State of California and the County of Los Angeles.

24.    Defendant CABELA'S LLC is a single member limited liability company organized under the laws of Delaware with its principal place of business in Sidney, Nebraska. The sole member of Cabela's LLC is Huntsman Holdings, LLC, a multi-member limited liability company organized under the laws of the State of Delaware with its principal place of business in Springfield, Missouri.  The members of Huntsman Holdings, LLC are Bass Pro Group, LLC and ASHCO, Inc. Bass Pro Group, LLC is a single-member limited liability company organized under the laws of the State of Delaware with its principal place of business in Springfield, Missouri. The sole member of Bass Pro Group, LLC is Bass Pro Holdings, LLC, a single-member limited liability company organized under the laws of the State of Delaware with its principal place of business in Springfield, Missouri. Bass Pro

4862-9371-6049, v. 1

Holdings, LLC's single member is Johnny Morris Outdoors, LLC. Johnny Morris Outdoors, LLC (JMO) is a multi-member LLC, with three members: American Sportsman Holdings Co, Outdoor Holdings LLC and WSCP VII Mockingjay II, LLC. American Sportsman Holdings Co is a corporation organized within and with its principal place of business in Missouri.

25.     At all times relevant herein, Defendant conducted business within the State of California, County of Los Angeles, and within this judicial district.

## FACTUAL ALLEGATIONS

**A.     Website User and Usage Data Have Immense Economic Value.**

26.     The "world's most valuable resource is no longer oil, but data."[3]

27.     Earlier this year, Business News Daily reported that some businesses collect personal data (*i.e.*, gender, web browser cookies, IP addresses, and device IDs), engagement data (*i.e.*, how consumers interact with a business's website, applications, and emails), behavioral data (*i.e.*, customers' purchase histories and product usage information), and attitudinal data (*i.e.*, data on consumer satisfaction) from consumers.[4] This information is valuable to companies because they can use

---

[3] *The world's most valuable resource is no longer oil, but data*, The Economist (May 6, 2017), https://www.economist.com/leaders/2017/05/06/the-worlds-most-valuable-resource-is-no-longeroil-but-data.

[4] Max Freedman, *How Businesses Are Collecting Data (And What They're Doing With It)*, Business News Daily (Aug. 5, 2022), https://www.businessnewsdaily.com/10625-businesses-collecting-data.html.

CLASS ACTION COMPLAINT
4862-9371-6049, v. 1

this data to improve customer experiences, refine their marketing strategies, capture data to sell it, and even to secure more sensitive consumer data.[5]

28.    In a consumer-driven world, the ability to capture and use customer data to shape products, solutions, and the buying experience is critically important to a business's success. Research shows that organizations who "leverage customer behavior insights outperform peers by 85 percent in sales growth and more than 25 percent in gross margin."[6]

29.    In 2013, the Organization for Economic Cooperation and Development ("OECD") even published a paper entitled "Exploring the Economics of Personal Data: A Survey of Methodologies for Measuring Monetary Value."[7] In this paper, the OECD measured prices demanded by companies concerning user data derived from "various online data warehouses."[8]

30.    OECD indicated that "[a]t the time of writing, the following elements of personal data were available for various prices: USD 0.50 cents for an address, USD 2 [i.e. $2] for a date of birth, USD 8 for a social security number (government ID number), USD 3 for a driver's license number and USD 35 for a military record.

---

[5] *Id.*

[6] Brad Brown, Kumar Kanagasabai, Prashant Pant & Goncalo Serpa Pinto, *Capturing value from your customer data*, McKinsey (Mar. 15, 2017), https://www.mckinsey.com/business-functions/quantumblack/our-insights/capturing-value-from-your-customer-data.

[7] Exploring the Economics of Personal Data: A Survey of Methodologies for Measuring Monetary Value, OECD Digital Economy Papers, NO. 220 (Apr. 2, 2013), https://www.oecdilibrary.org/docserver/5k486qtxldmq-en.pdf.

[8] *Id.* at 25.

CLASS ACTION COMPLAINT

4862-9371-6049, v. 1

A combination of address, date of birth, social security number, credit record and military record is estimated to cost USD 55."[9]

## B.   Website Users Have a Reasonable Expectation of Privacy in Their Interactions with Websites.

31.   Consumers are skeptical and are wary about their data being collected. A report released by KPMG shows that "a full 86% of the respondents said they feel a growing concern about data privacy, while 78% expressed fears about the amount of data being collected."[10]

32.   Another recent paper also indicates that most website visitors will assume their detailed interactions with a website will only be used by the website and not be shared with a party they know nothing about.[11] As such, website visitors reasonably expect that their interactions with a website should not be released to third parties unless explicitly stated.[12]

33.   Privacy polls and studies show that a majority of Americans consider one of the most important privacy rights to be the need for an individual's affirmative

---

[9] *Id.*

[10] Lance Whitney, *Data privacy is a growing concern for more consumers*, TechRepublic (Aug. 17, 2021), https://www.techrepublic.com/article/data-privacy-is-a-growing-concern-for-more-consumers/.

[11] *CUJO AI Recent Survey Reveals U.S. Internet Users Expectations and Concerns Towards Privacy and Online Tracking*, CUJO (May 26, 2020), https://www.prnewswire.com/news-releases/cujo-ai-recent-survey-reveals-us-internet-users-expectations-and-concerns-towards-privacy-and-online-tracking-301064970.html.

[12] Frances S. Grodzinsky, Keith W. Miller & Marty J. Wolf, *Session Replay Scripts: A Privacy Analysis*, The Information Society, 38:4, 257, 258 (2022).

CLASS ACTION COMPLAINT

4862-9371-6049, v. 1

consent before a company collects and shares its customers' data.

34. A recent study by Consumer Reports shows that 92% of Americans believe that internet companies and websites should be required to obtain consent before selling or sharing consumers' data, and the same percentage believe internet companies and websites should be required to provide consumers with a complete list of the data that has been collected about them.[13]

35. Moreover, according to a study by Pew Research Center, a majority of Americans, approximately 79%, are concerned about how data is collected about them by companies.[14]

36. Users act consistently with their expectation of privacy. Following a new rollout of the iPhone operating software—which asks users for clear, affirmative consent before allowing companies to track users—85 percent of worldwide users and 94 percent of U.S. users chose not to allow such tracking.[15]

**C.    How Session Replay Code Works.**

37. Session Replay Code, such as that implemented on www.cabelas.com,

---

[13] *Consumers Less Confident About Healthcare, Data Privacy, and Car Safety, New Survey Finds*, Consumer Reports (May 11, 2017), https://www.consumerreports.org/consumerreports/consumers-less-confident-about-healthcare-data-privacy-and-car-safety/.

[14] *Americans and Privacy: Concerned, Confused, and Feeling Lack of Control Over Their Personal Information*, Pew Research Center, (Nov. 15, 2019), https://www.pewresearch.org/internet/2019/11/15/americans-and-privacy-concerned-Confusedand-feeling-lack-of-control-over-their-personal-information/.

[15] Margaret Taylor, *How Apple screwed Facebook*, Wired, (May 19, 2021), https://www.wired.co.uk/article/apple-ios14-facebook.

-16-
CLASS ACTION COMPLAINT

enables website operators to record, save, and replay website visitors' interactions with a given website. The clandestinely deployed code provides online marketers and website designers with insights into the user experience by recording website visitors "as they click, scroll, type or navigate across different web pages."[16]

38.    While Session Replay Code is utilized by websites for some legitimate purposes, it goes well beyond normal website analytics when it comes to collecting the actual contents of communications between website visitors and websites. Unlike other online advertising tools, Session Replay Code allows a website to capture and record nearly every action a website visitor takes while visiting the website, including actions that reveal the visitor's personal or private sensitive data, sometimes even when the visitor does not intend to submit the data to the website operator, or has not finished submitting the data to the website operator.[17] As a result, website visitors "aren't just sharing data with the [web]site they're on . . . but also with an analytics service that may be watching over their shoulder."[18]

39.    Session Replay Code works by inserting a computer code into the various event handling routines that web browsers use to receive input from users,

---

[16] Erin Gilliam Haije, *[Updated] Are Session Recording Tools a Risk to Internet Privacy?*, Mopinion (Mar. 7, 2018), https://mopinion.com/are-session-recording-tools-a-risk-to-internet-privacy/.
[17] *Id.*
[18] Eric Ravenscraft, *Almost Every Website You Visit Records Exactly How Your Mouse Moves*, Medium (Feb. 5, 2020), https://onezero.medium.com/almost-every-website-you-visit-records-exactly-how-your-mouse-moves-4134cb1cc7a0.

CLASS ACTION COMPLAINT

4862-9371-6049, v. 1

thus intercepting the occurrence of actions the user takes. When a website delivers a Session Replay Code to a user's browser, the browser will follow the code's instructions by sending responses in the form of "event" data to a designated third-party server. Typically, the server receiving the event data is controlled by the third-party entity that wrote the Session Replay Code, rather than the owner of the website where the code is installed.

40.    The types of events captured by the Session Replay Code vary by specific product and configuration, but in general are wide-ranging and can encompass virtually every user action, including all mouse or finger movements, clicks, scrolls, zooms, window resizes, keystrokes, text entry, and numerous other forms of a user's navigation and interaction through the website.. In order to permit a reconstruction of a user's visit accurately, the Session Replay Code must be capable of capturing these events at hyper-frequent intervals, often just milliseconds apart. Events are typically accumulated and transmitted in blocks periodically throughout the user's website session, rather than after the user's visit to the website is completely finished.

41.    Unless specifically masked through configurations chosen by the website owner, some visible contents of the website may also be transmitted to the Session Replay Provider.

42.    Once the events from a user session have been recorded by a Session

CLASS ACTION COMPLAINT

4862-9371-6049, v. 1

Replay Code, a website operator can view a visual reenactment of the user's visit through the Session Replay Provider, usually in the form of a video, meaning "[u]nlike typical analytics services that provide aggregate statistics, these scripts are intended for the recording and playback of individual browsing sessions."[19]

43.    Because most Session Replay Codes will by default indiscriminately capture the maximum range of user-initiated events and content displayed by the website, researchers have found that a variety of highly sensitive information can be captured in event responses from website visitors, including medical conditions, credit card details, and other personal information displayed or entered on webpages.[20]

44.    Most alarming, Session Replay Code may capture data that the user did not even intentionally transmit to a website during a visit, and then make that data available to website owners when they access the session replay through the Session Replay Provider. For example, if a user writes information into a text form field, but then chooses not to click a "submit" or "enter" button on the website, the Session Replay Code may nevertheless cause the non-submitted text to be sent to the designated event-response-receiving server before the user deletes the text or leaves

---

[19] Steven Englehardt, *No boundaries: Exfiltration of personal data by session-replay scripts*, Freedom to Tinker (Nov. 15, 2017), https://freedom-to-tinker.com/2017/11/15/no-boundaries-exfiltration-of-personal-data-by-session-replay-scripts/.
[20] *Id.*

CLASS ACTION COMPLAINT
4862-9371-6049, v. 1

the page. This information will then be viewable to the website owner when accessing the session replay through the Session Replay Provider.

45.     Because the Session Replay Code records not only the contents of Plaintiff's intended communications, but also documents and records information Plaintiff does not choose to communicate, the Session Replay Code acts to invade the privacy of the user.  In the analogy of a face-to-face conversation, Session Replay Code records not only what was said, but what one participant considered saying and chose not to.

46.     In this way, the Session replay Code represents and invasion of the Plaintiff's privacy.   By employing the Session Replay Code, Defendant is intentionally intruding, through the placement of code on Plaintiff's devices, on the private affairs and thoughts of the Plaintiff.  This sort of intrusion is highly offensive and unreasonable, as a person using a website has a reasonable expectation that they are only sharing the content of their communications when they send that communication, and then only to the intended recipient. Defendant's spying on Plaintiff's uncommunicated content, and in fact causing that content to be communicated to a third party, is highly offensive.

47.     Session Replay Code does not necessarily anonymize user sessions, either.

48.     First, if a user's entry of personally identifying information is captured

-20-
CLASS ACTION COMPLAINT

4862-9371-6049, v. 1

in an event response, that data will become known and visible to both the Session Replay Provider and the website owner.

49.    Second, if a website displays user account information to a logged-in user, that content may be captured by Session Replay Code.

50.    Third, some Session Replay Providers explicitly offer website owners cookie functionality that permits linking a session to an identified user, who may be personally identified if the website owner has associated the user with an email address or username.[21]

51.    Session Replay Providers often create "fingerprints" that are unique to a particular user's combination of device and browser settings, screen configuration, and other detectable information. The resulting fingerprint, which is often unique to a user and rarely changes, are collected across all sites that the Session Replay Provider monitors.

52.    When a user eventually identifies themselves to one of these websites (such as by filling in a form), the provider can then associate the fingerprint with the user identity and can then back-reference all of that user's other web browsing across other websites previously visited, including on websites where the user had intended to remain anonymous—even if the user explicitly indicated that they would like to

---

[21] *Id.*; *see also FS.identify – Identifying users*, FullStory, https://help.fullstory.com/hc/en-us/articles/360020828113, (last visited Sep. 8, 2022).

CLASS ACTION COMPLAINT

4862-9371-6049, v. 1

remain anonymous by enabling private browsing.

53.   In addition to the privacy invasions caused by the diversion of user communications with websites to third-party Session Replay Providers, Session Replay Code also exposes website visitors to identity theft, online scams, and other privacy threats.[22] Indeed, "[t]he more copies of sensitive information that exist, the broader the attack surface, and when data is being collected [ ] it may not be stored properly or have standard protections" increasing "the overall risk that data will someday publicly leak or be breached."[23]

54.   The privacy concerns arising from Session Replay Code are not theoretical or imagined. The CEO and founder of LOKKER, a provider of data privacy and compliance solutions has said "[consumers] should be concerned" about the use of Session Replay Code because "they won't know these tools are operating 'behind the scenes' of their site visit" and "even if the company disclosed that they are using these tools, consumers wouldn't likely be able to opt-out and still use the site."[24]

---

[22] Juha Sarrinen, *Session Replay is a Major Threat to Privacy on the Web*, itnews (Nov. 16, 2017), https://www.itnews.com.au/news/session-replay-is-a-major-threat-to-privacy-on-the-web-477720.

[23] Lily Hay Newman, *Covert 'Replay Sessions' Have Been harvesting Passwords by Mistake*, WIRED (Feb. 26, 2018), https://www.wired.com/story/covert-replay-sessions-harvesting-passwords/.

[24] Mark Huffner, *Is 'session replay software' a privacy threat or just improving your web experience*, Consumer Affairs (Oct. 25, 2022), https://www.consumeraffairs.com/news/is-session-replay-software-a-privacy-threat-or-just-improving-your-web-experience-102522.html.

4862-9371-6049, v. 1

55.     Indeed, the news is replete with examples of the dangers of Session Replay Code. For example, in 2019, the App Analyst, a mobile expert who writes about his analyses of popular apps, found that Air Canada's iPhone app wasn't properly masking the session replays they were sent, exposing unencrypted credit card data and password information.[25] This discovery was made just weeks after Air Canada said its app had a data breach, exposing 20,000 profiles.[26]

56.     Further, multiple companies have removed Session Replay Code from their websites after it was discovered the Session Replay Code captured highly sensitive information. For instance, in 2017, Walgreens stopped sharing data with a Session Replay Provider after it was discovered that the Session Replay Provider gained access to website visitors' sensitive information.[27] Indeed, despite Walgreens' extensive use of manual redactions for displayed and inputted data, the Session Replay Provider still gained access to full names of website visitors, their medical conditions, and their prescriptions.[28]

57.     Following the Walgreens incident, Bonobos, a men's clothing retailer, announced that it was eliminating data sharing with a Session Replay Provider after

---

[25] Zach Whittaker, *Many Popular iPhone Apps Secretly Record Your Screen Without Asking*, TechCrunch (Feb. 6, 2019), https://techcrunch.com/2019/02/06/iphone-session-replay-screenshots/.
[26] *Id.*
[27] Nitasha Tiku, *The Dark Side of 'Replay Sessions' That Record Your Every Move Online*, WIRED (Nov. 16, 2017), https://www.wired.com/story/the-dark-side-of-replay-sessions-that-record-your-every-move-online/.
[28] Englehardt, *supra* note 17.

CLASS ACTION COMPLAINT
4862-9371-6049, v. 1

it was discovered that the Session Replay Provider captured credit card details, including the cardholder's name and billing address, and the card's number, expiration, and security code from the Bonobos' website.[29]

58.    Recognizing the privacy concerns posed by Session Replay Code, in 2019 Apple required app developers to remove or properly disclose the use of analytics code that allow app developers to record how a user interacts with their iPhone apps or face immediate removal from the app store.[30] In announcing this decision, Apple stated: "Protecting user privacy is paramount in the Apple ecosystem. Our App Store Review Guidelines require that apps request explicit user consent and provide a clear visual indication when recording, logging, or otherwise making a record of user activity."[31]

**D.    Cabela's Secretly Wiretaps its Website Visitors' Electronic Communications.**

59.    Cabela's operates the website www.cabelas.com, as well as all of its subpages. Cabela's is an online and brick-and-mortar retailer, which specializes in hunting, fishing, camping, and other related outdoor merchandise.

60.    However, unbeknownst to the millions of individuals perusing Cabela's

---

[29] Tiku, *supra* note 25.

[30] Zack Whittaker, *Apple Tells App Developers to Disclose or Remove Screen Recording Code*, TechCrunch (Feb. 7, 2019), https://techcrunch.com/2019/02/07/apple-glassbox-apps/.

[31] *Id.*

4862-9371-6049, v. 1

products online, Cabela's intentionally procures and embeds various Session Replay Codes from Session Replay Providers on its website to track and analyze website user interactions with www.cabelas.com. Because the Session Replay Providers are unknown eavesdroppers to visitors to www.cabelas.com, they are not parties to website visitors' Website Communications with Defendant.

61.    One such Session Replay Provider that Defendant engaged is Microsoft.

62.    Microsoft is the owner and operator of a Session Replay Code titled Clarity, which provides basic information about the website user sessions, interactions, engagements, and breaks down user by device type, county, and other dimensions. [32]

63.    Clarity captures a user's interactions with a website, logging every website user's mouse movements and clicks, scrolling window resizing, user inputs, and more.[33] Indeed, Clarity organizes the information it captures into over 30 different categories including, *inter alia*: the date a user visited the website, the device the user accessed the website on, the type of browser the user accessed the website on, the operating system of the device used to access the website, the country

---

[32]    Jono    Alderson,    An    Introduction    to    Microsoft    Clarity,    Yoast, https://yoast.com/introductionmicrosoft-clarity/#h-what-is-microsoft-clarity, (last visited Oct. 4, 2022).

[33] *Clarity Data Collection*, Microsoft, https://docs.microsoft.com/en-us/clarity/clarity-data, (last visited Dec. 29, 2022).

CLASS ACTION COMPLAINT

4862-9371-6049, v. 1

where the user accessed the website from, a user's mouse movements, a user's screen swipes, text inputted by the user on the website, and how far down a webpage a user scrolls.[34] Clarity even provides a specific user ID to each website visitor so their website use and interactions can be monitored over time. [35]

64.    Similar to other Session Replay Codes, the information collected and recorded by Clarity can then be used to play back a user's journey through a website, showing how they interacted with site navigation, calls to action, search features, and other on-page elements.[36] Put differently, the information Clarity captures can be translated into a simulation video of how a user interacts with a website.

65.    Clarity also uses the information captured to create detailed heatmaps of a website that provide information about which elements of a website have high user engagement, how far website users scrolled on the website, and the total clicks within a given area on the website. [37]

66.    Clarity offers websites three standard approaches when it comes to masking sensitive information collected from a user's interactions with a website—strict (all text entered by a user is purportedly masked), balanced (sensitive text

---

[34] *Filters Overview*, Microsoft (Jul. 26, 2022), https://docs.microsoft.com/en-us/clarity/clarity-filters.
[35] *Id.*
[36] Roger Montti, *Microsoft Clarity Analytics: Everything You Need to Know*, SEJ (Jan. 19, 2022), https://www.searchenginejournal.com/microsoft-clarity-analytics-overview/419311/#close.
[37] Haley Walden, *What is Microsoft Clarity? (& How Can it Improve SEO?)*, Elegant Themes (Jun. 12, 2022), https://www.elegantthemes.com/blog/wordpress/microsoft-clarity-improve-seo.

CLASS ACTION COMPLAINT
4862-9371-6049, v. 1

entered into certain specifically pre-coded fields, such as passwords and credit card information, is masked), and relaxed (no text entered by a user is masked).[38] When Clarity is set to "relaxed," whatever information a user enters into the field on a website can be previewed in session recordings.[39] Additionally, Clarity enables websites to select specific elements and content to mask or unmask, customizing the standard masking approaches.[40]

67.    However, even when a website operator selects the "strict" and "balanced" settings, Clarity is nevertheless capable of collecting text entered by users, including text containing sensitive information.

68.    As such, Clarity collects highly personal information and substantive communications that can be linked directly to a website user's identity as it monitors, records, and collects a website user's every move.

69.    Once Clarity's JavaScript is installed on a website, Clarity begins collecting website users' interactions within two hours of installation.[41] Once deployed, the wiretapping commences immediately on the visitor's web browser when the visitor loads a website in their browser.

---

[38] *Microsoft Clarity, An Essential Part of Customer Experience Optimization*, TechAir (Aug. 17, 2022), https://privacy.microsoft.com/en-US/privacystatement.
[39] *Id.*
[40] *Masking Content*, Microsoft (Jul. 18, 2022), https://docs.microsoft.com/en-us/clarity/clarity-masking.
[41] *Frequently Asked Questions*, Microsoft, https://docs.microsoft.com/en-us/clarity/faq, (last visited Dec. 29, 2022).

CLASS ACTION COMPLAINT
4862-9371-6049, v. 1

70. Data collected by Clarity is then stored in the Microsoft Azure cloud service and Microsoft has access to that information. [42]

71. Defendant's procurement and use of the Microsoft tool, the Clarity's Session Replay Code, and procurement and use of other Session Replay Codes through various Session Replay Providers, and their knowing derivation of a benefit and/or information from the Website Communications surreptitiously intercepted and recorded by Session Replay Codes is a violation of California statutory and common law.

**E.    Plaintiff's and Class Members' Experience.**

72. Plaintiff has visited www.cabelas.com. Specifically, Plaintiff visited www.cabelas.com and certain of its subpages via the web browser on his mobile device prior to the filing of this action.

73. While visiting Defendant's website, Plaintiff fell victim to Defendant's unlawful monitoring, recording, and collection of Plaintiff's Website Communications with www.cabelas.com.

74. Unknown to Plaintiff, Defendant procured and embeds Session Replay Code on their website. In particular, Microsoft's Clarity Session Replay Code was operative on Defendant's website and subpages during multiple visits by Plaintiff to Defendant's website.

---

[42] *Id.*

4862-9371-6049, v. 1

75. During Plaintiff's visits to Defendant's website and its subpages, Plaintiff browsed for different products for sale. Plaintiff communicated with Defendant's website by using his finger to scroll and click on the various webpages while browsing for products. Plaintiff, through his mobile device, transmitted electronic communications in the form of instructions to Defendant's computer servers utilized to operate the website. The commands were sent as messages instructing Defendant what content was being viewed, clicked on, requested and/or inputted by Plaintiff. The communications sent by Plaintiff to Defendant's servers included, but were not limited to, the following actions taken by Plaintiff while on the website: finger scrolls, clicks, and movements, keystrokes, search terms, substantive information inputted by Plaintiff, pages and content viewed by Plaintiff, scroll movement, and copy and paste actions.

76. Defendant responded to Plaintiff's electronic communications by supplying - through their website - the information requested by Plaintiff. This series of requests and responses — whether online or over the phone — is electronic communications under the CIPA.

77. Even though Plaintiff did not end up purchasing any products on his visits to Defendant's website, the Session Replay Code nevertheless instantaneously captured his electronic communications throughout his visits. Indeed, through Defendant's procurement of Session Replay Code, Plaintiff's electronic

-29-
CLASS ACTION COMPLAINT

communications were automatically and secretly intercepted by using Defendant's website.

78. While visiting Defendant's website, Plaintiff fell victim to Defendant's unlawful monitoring, recording, and collection of Plaintiff's Website Communications with www.cabelas.com.

79. Further, without his consent, Defendant procured Session Replay Providers to obtain certain information about his device and browser, and create a unique ID and profile for him.

80. For example, when visiting cabelas.com and its subpages, if a website user looks at a product, that information is captured by Session Replay code embedded on the website:



81. Similarly, when you select a store closest to you in order to view

CLASS ACTION COMPLAINT
4862-9371-6049, v. 1

inventory and schedule in-store pick-up, that information is sent to Service Replay Providers:



82.    The wiretapping by the Session Replay code is ongoing during the visit and intercepts the contents of these communications between Plaintiff and Defendant with instantaneous transmission to the Session Replay Provider, as illustrated below, in which only 34 milliseconds were required to send a packet of event response data, which indicated whatever the website user had just done:

CLASS ACTION COMPLAINT

4862-9371-6049, v. 1

83.    Thus, on multiple occasions when Plaintiff visited Defendant's website and its subpages, the contents of his communications with the website were intercepted by Session Replay Code and simultaneously transmitted to Session Replay Providers, including, at least, Microsoft.

84.    The Session Replay Codes operate in the same manner for all putative Class Members.

85.    Like Plaintiff, each Class Member visited www.cabelas.com and its subpages with Session Replay Code embedded in it, and those Session Replay Codes watched and intercepted the Class Members' Website Communications with www.cabelas.com by sending hyper-frequent logs of those communications to Session Replay Providers.

86.    Even if Defendant masks certain elements when it configures the settings of the Session Replay Code embedded on its website, any operational

-32-
CLASS ACTION COMPLAINT

4862-9371-6049, v. 1

iteration of the Session Replay Code will, by its very nature and purpose, intercept the contents of communications between the website's visitors and the website owner.

87. For example, even with heightened masking enabled, Session Replay Providers will still learn through the intercepted data exactly which pages a user navigates to, how the user moves through the page (such as which areas the user zooms in on or interacts with), and additional substantive information.

88. As a specific example, if a user types a product into Defendant's main search bar and initiates a search, even if the text entered into the search bar is masked, Session Replay Providers will still learn what is entered into the bar as soon as the search result page loads. This is so because the responsive search results will be displayed on the subsequent page, and the responsive content generated by Defendant will repeat the searched information back on the generated page. That information will not be masked even if user-inputted text is fully masked in a text field.

89. Plaintiff reasonably expected that his visits to Defendant's website would be private, and that Defendant would not be watching, tracking, and recording Plaintiff as he browsed and interacted with the website, particularly because Plaintiff was never presented with any type of pop-up disclosure or consent form alerting Plaintiff that his visits to the website were being watched and recorded by Defendant.

CLASS ACTION COMPLAINT

4862-9371-6049, v. 1

Moreover, he used his own personal device to communicate with the website, was not aware of anyone else present during the communication and presumed his private interactions with Defendant's website were just that – private.

90.    Plaintiff reasonably believed that he was interacting privately with Defendant's website, and not that he was being watched and recorded and that those recordings could later be watched again and again by Defendants' employees, or worse yet, live while Plaintiff was on the website.

91.    The Session Replay Providers that provided the Session Replay Code to Defendant are not providers of wire or electronic communication services, or an internet service provider.

92.    Defendant is not a provider of wire or electronic communication services, or an internet service provider.

93.    Defendant utilized Session Replay Code to intentionally and contemporaneously watch and intercept the substance and content of Plaintiff's electronic communications with Defendant's website, including finger scrolls, clicks, and movements, keystrokes, search terms, substantive information inputted by Plaintiff, pages and content viewed by Plaintiff, scroll movements, and copy and paste actions. In other words, Defendant intercepted, stored, and recorded the webpages visited by Plaintiff, as well as everything Plaintiff did on those pages, what Plaintiff searched for, what Plaintiff looked at, and the information Plaintiff inputted.

CLASS ACTION COMPLAINT

4862-9371-6049, v. 1

94.     The Session Replay Providers intentionally utilized by Defendant contemporaneously watched and intercepted the content of electronic computer-to-computer data communications between Plaintiff's computer and/or mobile device and the computer servers and hardware utilized by Defendant to operate their website - as the communications were transmitted from Plaintiff's computer and/or mobile device to Defendant's computer servers and hardware – and while viewing, copied and sent and/or re-routed the communications to a storage file within the Session Replay Provider(s)'s server(s). The intercepted data was transmitted contemporaneously to the Session Replay Provider(s) server(s) as it was sent from Plaintiff's computer and/or mobile device.

95.     The Session Replay Code utilized by Defendant is an electronic, mechanical or other analogous device or apparatus in that the Session Replay Code monitors, intercepts, collects, and records the content of electronic computer-to-computer communications between Plaintiff's computer and/or mobile device and the computer servers and hardware utilized by Defendant to operate its website.

96.     Alternatively, even if the Session Replay Code itself were not a device for purposes of the Act, the Session Replay Code is software designed to alter the operation of a website visitor's computer or mobile phone by instructing the hardware components of that physical device to run processes that ultimately intercept the visitor's communications and transmit them to the third-party Session

CLASS ACTION COMPLAINT
4862-9371-6049, v. 1

Replay Provider, without the visitor's knowledge.

97.    The Session Replay Code procured by Defendant is not a website cookie, standard analytics tool, tag, web beacon, or other similar technology. Instead, the data collected by the Session Replay Code identified specific information inputted and content viewed, and thus revealed personalized and sensitive information about website visitors' Internet activity and habits. As such, by the very nature of its operation, the Session Replay Code is a device used to intercept electronic communications. The electronic communications intentionally monitored, watched, intercepted, collected, and recorded by Defendant was content generated through Plaintiff's intended use, interaction, and communication with Defendant's website relating to the substance and/or meaning of Plaintiff's communications with the website, i.e., finger scrolls, clicks, and movements, keystrokes, search terms, information inputted by Plaintiff, and pages and content clicked on and viewed by Plaintiff. This information is "content" as defined by the Electronic Communications Privacy Act ("ECPA") 18 U.S.C. § 2511(1) *et seq.* and is not merely record information regarding the characteristics of the message that is generated in the course of the communication, nor is it simply information disclosed in the referrer headers. The mere fact that Defendant values this content, monitor, intercept and record it, confirms these communications are content that convey substance and meaning to Defendant.

CLASS ACTION COMPLAINT

4862-9371-6049, v. 1

98.    The electronic communications intentionally intercepted by Defendant were not generated automatically and were not incidental to Plaintiff's communications.

99.    The Session Replay Code utilized by Defendant watched, intercepted, copied, replicated, and sent the data in a manner that was undetectable by Plaintiff.

100.    The session replay technology utilized by Defendant gave it the ability to view Plaintiff's website visits live in real-time as they were occurring and intercept the content of these electronic communications as they were occurring, which is exactly what Defendant did.

101.    These electronic data communications were not only watched in real-time, intercepted contemporaneously with transmission and stored, but could also be used by Defendant to create a video playback of Plaintiff's visit to the website. Defendant's contemporaneous interception of Plaintiff's electronic communications during transmission allowed Defendant to observe, capture, and divulge Plaintiff's personal interests, browsing history, queries, and habits as he interacted with and browsed Defendant's website in real-time.

102.    Defendant similarly intercepted electronic communications of at least thousands of other individuals located across the country who visited Defendant's website.

103.    Defendant did not utilize a telephone or telegraph instrument,

4862-9371-6049, v. 1

equipment, or facility to intercept Plaintiff's and the Class Members' electronic communications at issue. Rather, Defendant utilized a code embedded within their website to watch and intercept the communications at issue. By the very nature of its operation, said code is the equivalent of a device or apparatus used to intercept wire or electronic communications.

104.   The electronic communications intercepted by Defendant did not originate from an electronic or mechanical device which permits the tracking of the movement of a person or an object.

105.   Defendant never alerted or asked Plaintiff or the Class Members for permission to watch, intercept and record their visits to Defendant's website using Session Replay Code.

106.   Plaintiff and the Class Members never consented to being watched or having their electronic communications on Defendant's website intercepted by Defendant or anyone acting on Defendant's behalf, and they were never given the option to opt out of Defendant's surreptitious watching and recording.

107.   Plaintiff and the Class Members never provided Defendant, its employees, or agents with consent to watch and intercept and record their electronic communications using Session Replay Code.

108.   Plaintiff and the Class Members did not specifically, clearly, and unmistakably consent to Defendant's watching, interception and recording of their

-38-
CLASS ACTION COMPLAINT

4862-9371-6049, v. 1

electronic communications using Session Replay Code.

109. Plaintiff and the Class Members did not specifically, clearly, and unmistakably consent to Defendant's interception and recording of their visits to Defendant's website using Session Replay Code.

110. Plaintiff and the Class Members did not have a reasonable opportunity to discover Defendant's unlawful interceptions because Defendant did not disclose that it was watching their activity, nor did Defendant disclose the interception, nor did it seek consent from Plaintiff and the Class Members prior to interception of their communications.

111. Plaintiff and the Class Members never clicked or otherwise agreed to any disclosure or consent form authorizing Defendant to watch and intercept Plaintiff's and the Class Members' electronic communications using Session Replay Code.

112. Defendant intercepted Plaintiff's and the Class Members' electronic communications from the moment they landed on Defendant's website, and before they had an opportunity to even consider consenting or agreeing to any privacy or terms of use policy on the website. Defendant's unlawful watching and interception occurred before Plaintiff and the Class Members were given an opportunity to review, let alone consent, to any language that Defendants may claim purportedly authorized their violations of the CIPA.

113. Defendant's website failed to explicitly alert or otherwise notify Plaintiff and the Class Members that Defendant would be utilizing Session Replay Code to monitor and record their interactions with Defendant's website.

114. Upon immediately landing on Defendant's website, Plaintiff and the Class Members were not alerted that by entering the website Defendant would unilaterally attempt to bind them to its terms and policies or privacy policy. Indeed, the landing page to Defendant's website not only fails to advise visitors that Defendant is intercepting their electronic communications, it does not contain any type of conspicuous disclosure regarding Defendant's terms of use or privacy policy.

115. Plaintiff and the Class Members were not immediately required to click on any box or hyperlink containing Defendant's terms of use or privacy policy upon visiting the website or in order to navigate through the website.

116. Plaintiff and the Class Members were not placed on notice of Defendant's terms and policies or privacy policy upon immediately visiting the website. Instead, Defendant's terms of use and privacy policy are buried at the bottom of Defendant's website where Plaintiff and the Class Members were unable to see them.

117. Defendant does not require visitors to their website to immediately and directly acknowledge that the visitor has read Defendant's terms of use or privacy policy before proceeding to the site. In other words, Defendant's website does not

-40-
CLASS ACTION COMPLAINT

immediately direct visitors to the site to the terms of use or privacy policy and does not require visitors to click on a box to acknowledge that they have reviewed the terms and conditions/policy in order to proceed to the website.

118. There is no cookie banner that Plaintiff and Class Members must affirmatively ex-out of for it to no longer be visible on the Defendant's website.

119. Defendant's entire website, including its terms of use and privacy policy, are silent on Defendant's use of Session Replay Code to watch, monitor and record Plaintiff's and the Class Members' (1) finger or mouse scrolls, finger or mouse clicks and movements; (2) keystrokes; (3) search terms; (4) substantive information inputted into the website; and (5) pages and content viewed.

120. Defendant's use of Session Replay Code was not instrumental or necessary to the operation or function of Defendant's website or business.

121. Defendant's use of Session Replay Code to contemporaneously intercept Plaintiff's electronic communications at the time of transmission was not instrumental or necessary to Defendant's provision of any of their goods or services. Rather, the level and detail of information surreptitiously collected by Defendant indicates that the only purpose was to gain an unlawful understanding of the habits and preferences of users to their website, and the information collected was solely for Defendant's own benefit.

122. At least one of the purposes Defendant had in watching and intercepting

4862-9371-6049, v. 1

Plaintiff's and the Class Members' electronic communications was to allow Defendant to learn of Plaintiff's and the Class Members' personal preferences, which would then be used to market Defendant's services and goods to Plaintiff and the Class Members.

123. Plaintiff and the Class Members had a reasonable expectation of privacy during their visits to Defendant's website, which Defendant violated by intentionally monitoring and intercepting the content of their electronic communications with the website.

124. As the 2017 study recognized, the extent of data collected by Session Replay Code "far exceeds user expectations; text typed into forms is collected before the user submits the form, and precise mouse movements are saved, all without any visual indication to the user."[43]

125. Defendant's covert monitoring and interception of Plaintiff's and the Class Members' electronic communications caused Plaintiff and the Class Members harm, including violations of their substantive legal privacy rights under the CIPA, invasion of privacy, invasion of their rights to control information concerning their person, and/or the exposure of their private information. Moreover, Defendant's practices caused harm and a material risk of harm to Plaintiff's and the Class Members' privacy and interest in controlling their personal information, habits, and

---

[43] Englehardt, *supra* note 17.

4862-9371-6049, v. 1

preferences.

**STANDING**

126. Defendant's conduct constituted invasions of privacy because it disregarded Plaintiff's statutorily protected rights to privacy, in violation of CIPA and the Wiretap Act.

127. Defendant caused Plaintiff to (1) suffer invasions of legally protected interests. The invasions were concrete because the injuries actually existed for Plaintiff and continue to exist every time Plaintiff visits Defendant's website. The privacy invasions suffered by Plaintiff and Class Members were real and not abstract. Plaintiff and Class Members have a statutory right to be free from interceptions of their communications. The interceptions Defendant performed were meant to secretly spy on Plaintiff to learn more about Plaintiff's behavior. Plaintiff and Class Members were completely unaware they were being observed. Plaintiff's injuries were not divorced from concrete harm in that privacy has long been protected in the form of trespassing laws and the Fourth Amendment of the U.S. Constitution for example. Like here, an unreasonable search may not cause actual physical injury, but is considered serious harm, nonetheless. (3) The injuries here were particularized because they affected Plaintiff in personal and individual ways. The injuries were individualized rather than collective since Plaintiff's unique communications were examined without consent during different website visits on

CLASS ACTION COMPLAINT

4862-9371-6049, v. 1

separate occasions. (4) Defendant's past invasions were actual and future invasions are imminent and will occur next time Plaintiff visits Defendant's website. Defendant continues to intercept communications without consent. A favorable decision by this court would redress the injuries of Plaintiff and each Class.

## TOLLING

128.    Any applicable statute of limitations has been tolled by the "delayed discovery" rule.  Plaintiff did not know (and had no way of knowing) that Plaintiff's information was intercepted, because Defendant kept this information secret.

## CLASS ACTION ALLEGATIONS

129.    Plaintiff brings this lawsuit as a class action on behalf of Plaintiff and Class Members of a proposed Class and Subclass under F.R.C.P. 23.

130.    Plaintiff proposes the following Class and Subclass, consisting of and defined as follows:

Class

All persons in the United States whose communications were intercepted by Defendant or its agents.

Subclass

All persons in California whose communications were intercepted by Defendant or its agents.

131.    Excluded from the Class is Defendant, its parents, subsidiaries,

-44-

CLASS ACTION COMPLAINT

4862-9371-6049, v. 1

affiliates, officers, and directors, all persons who make a timely election to be excluded from the Class, the judge to whom this case is assigned and any immediate family members thereof, and the attorneys who enter their appearance in this action.

132. **Numerosity**: The Class Members are so numerous that joinder of all members would be unfeasible and impractical. The membership of each Class is currently unknown to Plaintiff at this time; however, given that, on information and belief, Defendant accessed millions of unique computers and mobile devices, it is reasonable to presume that the members of each Class are so numerous that joinder of all members is impracticable. The disposition of their claims in a class action will provide substantial benefits to the parties and the Court.

133. **Commonality**: This action involves questions of law and fact that are common to the Class Members. Such common questions include, but are not limited to: (a) whether Defendant employed Session Replay Providers to intercept and record Defendant's website visitors' Website Communications; (b) whether Defendant operated or participated in the operation of an eavesdropping device; (c) whether Defendant derives a benefit or information from the illegal use of an eavesdropping device; (d) whether Defendant directed another to use an eavesdropping device illegally on their behalf; (e) whether a Session Replay Code is an "eavesdropping device" used to intercept or record private electronic communications; (f) whether Defendant acquired the contents of website users'

CLASS ACTION COMPLAINT

4862-9371-6049, v. 1

private electronic communications without their consent; (g) whether Plaintiff and Class Members had a reasonable expectation of privacy in their Website communications; (f) whether Defendant violated the Electronic Communications Act of 1986 and the California Invasion of Privacy Act, 18 U.S.C. §§2510-2523 and the CIPA, Cal. Penal Code § 630, *et seq.*, the elements of which are congruent.; (g) whether Defendant's conduct violates Cal. Penal Code §§ 484 and 496; (h) whether Defendant violated Electronic Communications Privacy Act, 18 U.S.C. § 2701, *et seq.* (i) whether Plaintiff and Class Members are entitled to equitable relief; and (j) whether Plaintiff and Class Members are entitled to actual, statutory, punitive, or other forms of damages, and other monetary relief.

134. **Typicality**: Plaintiff's claims are typical of the other Class Members' claims because, among other things, all Class Members were comparably injured through the uniform prohibited conduct described above. For instance, Plaintiff and each member of the Class had their electronic communications intercepted in violation of the law and their right to privacy. This uniform injury and the legal theories that underpin recovery make the claims of Plaintiff and the members of the Class typical of one another.

135. **Adequacy**: Plaintiff has and will continue to fairly and adequately represent and protect the interests of the Class. Plaintiff has retained counsel competent and experienced in complex litigation and class actions, including

4862-9371-6049, v. 1

litigations to remedy privacy violations. Plaintiff has no interest that is antagonistic to the interests of the Class, and Defendant have no defenses unique to Plaintiff. Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the members of the Class, and they have the resources to do so. Neither Plaintiff nor his counsel has any interest adverse to the interests of the other members of the Class.

136. **Superiority**: This class action is appropriate for certification because class proceedings are superior to other available methods for the fair and efficient adjudication of this controversy and joinder of all members of the Class is impracticable. This proposed class action presents fewer management difficulties than individual litigation, and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court. Class treatment will create economies of time, effort, and expense and promote uniform decision-making.

137. **Predominance**: Common questions of law and fact predominate over any questions affecting only individual Class Members. Similar or identical violations, business practices, and injuries are involved. Individual questions, if any, pale by comparison, in both quality and quantity, to the numerous common questions that dominate this action. For example, Defendant's liability and the fact of damages is common to Plaintiff and each member of the Class. If Defendant intercepted

CLASS ACTION COMPLAINT
4862-9371-6049, v. 1

Plaintiff's and Class Members' Website Communications, then Plaintiff and each Class Member suffered damages by that conduct.

138. **Ascertainability:** Members of the Class are ascertainable. Class membership is defined using objective criteria and Class Members may be readily identified through Defendant's books and records or the Session Replay Providers' books and records

## FIRST CAUSE OF ACTION

## UNLAWFUL WIRETAPPING AND INTERCEPTION OF ELECTRONIC COMMUNICATION

## CALIFORNIA PENAL CODE §§ 630-638

## (ON BEHALF OF PLAINTIFF AND THE CALIFORNIA SUB-CLASS)

139. Plaintiff repeats, re-alleges, and incorporates by reference, all other paragraphs of this complaint.

140. Defendant intercepted components of Plaintiff's and Class Members' private electronic communications and transmissions when Plaintiff and other Class Members accessed Defendant's website from within the State of California.

141. Plaintiff and Class Members did not know Defendant was engaging in such interception and therefore could not provide consent to have any part of their private electronic communications intercepted by Defendant.

142. To establish liability under section 631(a), a plaintiff need only

CLASS ACTION COMPLAINT

4862-9371-6049, v. 1

establish that the defendant, "by means of any machine, instrument, contrivance, or in any other manner" does any of the following:

Intentionally taps, or makes any unauthorized connection, whether physically, electrically, acoustically, inductively or otherwise, with any telegraph or telephone wire, line, cable, or instrument, including the wire, line, cable, or instrument of any internal telephonic communication system;

**Or**

Willfully and without the consent of all parties to the communication, or in any unauthorized manner, reads or attempts to read or learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line or cable or is being sent from or received at any place within this state;

**Or**

Aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned above in this section;

143.    Section 631(a) is not limited to phone lines, but also applies to "new technologies" such as computers, the Internet, and email. *Matera v. Google Inc.*, 2016 WL 8200619, at *21 (N.D. Cal. Aug. 12, 2016) (CIPA applies to "new

-49-
CLASS ACTION COMPLAINT

technologies" and must be construed broadly to effectuate its remedial purpose of protecting privacy); *Bradley v. Google, Inc.*, 2006 WL 3798134, at *5-6 (N.D. Cal. Dec. 22, 2006) (CIPA governs "electronic communications"); *In re Facebook, Inc. Internet Tracking Litigation*, --- F.3d --- 2020 WL 1807978 (9th Cir. Apr. 9, 2020) (reversing dismissal of CIPA and common law privacy claims based on Facebook's collection of consumers' Internet browsing history).

144.   Defendant's use of the "session replay" spyware is a "machine, instrument, contrivance, or . . . other manner" used to engage in the prohibited conduct at issue here.

145.   By using the "session replay" spyware to track, record, and attempt to learn the contents of Plaintiff's and Class Members' electronic communications, Defendant intentionally tapped, electrically or otherwise, the lines of internet communication of Plaintiff and Class Members. and Defendant on the other.

146.   Plaintiff's and the Class Members' devices that Defendant accessed through its unauthorized actions included their computers, smart phones, and tablets and/or other electronic computing devices.

147.   Defendant violated Cal. Penal Code § 631 by knowingly  and without permission accessing, Plaintiff's and Class Members' electronic communications through the use of the "session replay" spyware in order for Defendant to track, understand, and attempt to learn the contents of Plaintiff's and Class Members'

4862-9371-6049, v. 1

electronic communications generated by the use of Defendant's website.

148.  Defendant violated Cal. Penal Code § 631 by knowingly and without permission intercepting, wiretapping, accessing, taking and using Plaintiff's and the Class Members' communications.

## SECOND CAUSE OF ACTION

## VIOLATIONS OF ELECTRONIC COMMUNICATIONS PRIVACY ACT

## 18 U.S.C. § 2511(1) *et seq.*

## UNAUTHORIZED INTERCEPTION, USE, AND DISCLOSURE

## (ON BEHALF OF PLAINTIFF AND

## THE CLASS AND CALIFORNIA SUB-CLASS)

149.  Plaintiff repeats, re-alleges, and incorporates by reference, all other paragraphs of this complaint.

150.  The ECPA protects both sending and receipt of communications.

151.  18 U.S.C. § 2520(a) provides a private right of action to any person whose wire or electronic communications are intercepted, disclosed, or intentionally used in violation of Chapter 119 of Title 18 of the U.S. Code.

152.  The transmissions of Plaintiff's private information to Defendant via Defendant's Website qualifies as a "communication" under the ECPA's definition in 18 U.S.C. § 2510(12).

153.  **Electronic Communications**. The transmission of private information

4862-9371-6049, v. 1

between Plaintiff and Class Members and Defendant via its Website with which they chose to exchange communications are "transfer[s] of signs, signals, writing,…data, [and] intelligence of [some] nature transmitted in whole or in part by a wire, radio, electromagnetic, photoelectronic, or photooptical system that affects interstate commerce" and are therefore "electronic communications" within the meaning of 18 U.S.C. § 2510(2).

154. **Content.** The ECPA defines content, when used with respect to electronic communications, to "include[] *any* information concerning the substance, purport, or meaning of that communication." 18 U.S.C. § 2510(8) (emphasis added).

155. **Interception.** The ECPA defines the interception as the "acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device" and "contents … include any information concerning the substance, purport, or meaning of that communication." 18 U.S.C. § 2510(4), (8).

156. **Electronic, Mechanical, or Other Device**. The ECPA defines "electronic, mechanical, or other device" as "any device … which can be used to intercept a[n] … electronic communication[.]" 18 U.S.C. § 2510(5). The following constitute "devices" within the meaning of 18 U.S.C. § 2510(5):

    a.    Plaintiff's and Class Members' browsers;

    b.    Plaintiff's and Class Members' computing devices;

CLASS ACTION COMPLAINT
4862-9371-6049, v. 1

c.    Defendant's web-servers; and

d.    The Session Replay Code deployed by Defendant to effectuate the sending and acquisition of user communications.

157.    Courts have held that software constitutes a "device" for purposes of applying wiretap statutes. *See, e.g.*, *United States v. Barrington*, 648 F.3d 1178, 1203 (11th Cir. 2011) (accepting that a keylogger software could be considered a device); *Luis v. Zang*, 833 F.3d 619, 630 (6th Cir. 2016) (accepting that a software could be a "device" for the purpose of the Wiretap Act); *In re Carrier IQ, Inc.*, 78 F. Supp. 3d 1051, 1087 (N.D. Cal. 2015) (concluding that a software was an "electronic, mechanical or other device"); *Klumb v. Goan*, 884 F. Supp. 2d 644, 661-62 (E.D. Ten. 2012) (analyzing spyware software as a device under Wiretap Act); *Shefts v. Petrakis*, 2012 WL 4049484, at *8-9 (C.D. Ill. 2012) (analyzing software as a device under the Wiretap Act).

158.    Alternatively, even if the Session Replay Code itself were not considered a "device" under the Act, Defendant ultimately "uses" the physical computers and mobile phones of Plaintiff and Class members by sending the Session Replay Code to those devices.  In turn the Session Replay Code instructs those devices to run the physical processes necessary to accomplish the interception of Plaintiff's and Class members' communications and transmissions of those communications to the third-party Session Replay Providers.

4862-9371-6049, v. 1

159.  Defendant intentionally procures and embeds Session Replay Code on its website to spy on, automatically and secretly, and intercept its website visitors' electronic interactions and communications with Defendant in real time.

160.  By utilizing and embedding the Session Replay Code on its Website, Defendant intentionally intercepted, endeavored to intercept, and procured another person to spy on, automatically and secretly, and intercept in real time, the electronic communications of Plaintiff and Class Members, in violation of 18 U.S.C. § 2511(1)(a).

161.  Specifically, Defendant intercepted Plaintiff's and Class Members' electronic communications via the Session Replay Code, which tracked, stored, and unlawfully disclosed Plaintiff's and Class Members' Private Information, including compelling communication of information Plaintiff chose not to transmit, by recording keystrokes that did not result in a transmission. And then intercepting that transmission.

162.  By intentionally disclosing or endeavoring to disclose the electronic communications of the Plaintiff and Class Members to affiliates and other third parties, while knowing or having reason to know that the information was obtained through the interception of an electronic communication in violation of 18 U.S.C. § 2511(1)(a), Defendant violated 18 U.S.C. § 2511(1)(c).

163.  By intentionally using, or endeavoring to use, the contents of the

-54-
CLASS ACTION COMPLAINT

4862-9371-6049, v. 1

electronic communications of Plaintiff and Class Members, while knowing or having reason to know that the information was obtained through the interception of an electronic communication in violation of 18 U.S.C. § 2511(1)(a), Defendant violated 18 U.S.C. § 2511(1)(d).

164.    **Unauthorized Purpose**. Defendant intentionally intercepted the contents of Plaintiff's and Class Members' electronic communications for the purpose of committing a tortious act in violation of the Constitution or laws of the United States or of any State – namely, invasion of privacy, among other unlawful acts.

165.    Defendant intentionally used the wire or electronic communications to increase its profit margins. Defendant specifically used the Session Replay Code to track and utilize Plaintiff's and Class Members' information for financial gain.

166.    Defendant was not acting under color of law to intercept Plaintiff and the Class Member's wire or electronic communication.

167.    Plaintiff and Class Members did not authorize Defendant to acquire the content of their communications for purposes of invading Plaintiff's privacy via the Session Replay Code.

168.    Any purported consent that Defendant received from Plaintiff and Class Members was not valid.

169.    In sending and in acquiring the content of Plaintiff's and Class

-55-
CLASS ACTION COMPLAINT

4862-9371-6049, v. 1

Members' communications relating to the browsing of Defendant's Website, Defendant's purpose was tortious, criminal, and designed to violate federal and state legal provisions, including as described above the following: (1) a knowing intrusion into a private, place, conversation, or matter that would be highly offensive to a reasonable person; (2) violation of Cal. Penal Code § 630 *et seq.*; and (3) violation of Cal. Penal Code §§ 484 and 496.

**THIRD CAUSE OF ACTION**

**VIOLATION OF ELECTRONIC COMMUNICATIONS PRIVACY ACT**

**UNAUTHORIZED DIVULGENCE BY ELECTRONIC**

**COMMUNICATIONS SERVICE**

**18 U.S. Code § 2511(3)(a)**

**(ON BEHALF OF PLAINTIFF AND**

**THE CLASS AND CALIFORNIA SUB-CLASS)**

170.  Plaintiff incorporates all preceding paragraphs as though set forth herein.

171.  The ECPA Wiretap statute provides that "a person or entity providing an electronic communication service to the public shall not intentionally divulge the contents of any communication (other than one to such person or entity, or an agent thereof) while in transmission on that service to any person or entity other than an addressee or intended recipient of such communication or an agent of such addressee

4862-9371-6049, v. 1

or intended recipient." 18 U.S.C. § 2511(3)(a).

172. **Electronic Communication Service**. An "electronic communication service" is defined as "any service which provides to users thereof the ability to send or receive wire or electronic communications." 18 U.S.C. § 2510(15).

173. Plaintiff's web browser is an Electronic Communication service. It provides to users thereof the ability to send or receive Electronic Communications. In the absence of a web browser or some other system, internet users could not send or receive communications over the internet regarding that which the Plaintiff or Class Members are looking for and that which the entity is selling.

174. **Intentional Divulgence**. Defendant intentionally designed the web browser so that it would divulge the contents of Plaintiff's and Class Members' communications via the session replay technology, whether Plaintiff or Class members chose to send communications or not.

175. **While in Transmission**. Defendant's divulgence of the contents of Plaintiff's and Class Members' communications was contemporaneous with their exchange with the websites, to which they directed their communications. As described above, the session replay technology process occurs in milliseconds while the communication is still being exchanged between Plaintiff and Class Members and the websites to which they directed their communications.

176. Defendant divulged the contents of Plaintiff's and Class Members'

-57-
CLASS ACTION COMPLAINT

4862-9371-6049, v. 1

communications to Session Replay Providers without Plaintiff's and Class Members' consent and/or authorization. Plaintiff's and Class Member's communications were not to the Session Replay Provider and therefore were not to be divulged to the Session Replay Provider under 18 U.S.C. § 2511(3)(a).

177. **Exceptions do not apply**. In addition to the exception for communications directly to an ECS or an agent of an ECS, the Wiretap Act states that "[a] person or entity providing electronic communication service to the public may divulge the contents of any such communication":

a.    "as otherwise authorized in section 2511(2)(a) or 2517 of this title;"

b.    "with the lawful consent of the originator or any addressee or intended recipient of such communication;"

c.    "to a person employed or authorized, or whose facilities are used, to forward such communication to its destination;" or

d.    "which were inadvertently obtained by the service provider and which appear to pertain to the commission of a crime, if such divulgence is made to a law enforcement agency."

U.S.C. § 2511(3)(b).

178. Section 2511(2)(a)(i) provides:

It shall not be unlawful under this chapter for an operator of a

CLASS ACTION COMPLAINT

4862-9371-6049, v. 1

switchboard, or an officer, employee, or agent of a provider of wire or electronic communication service, whose facilities are used in the transmission of a wire or electronic communication, to intercept, disclose, or use that communication in the normal course of his employment while engaged in any activity which is a necessary incident to the rendition of his service or to the protection of the rights or property of the provider of that service, except that a provider of wire communication service to the public shall not utilize service observing or random monitoring except for mechanical or service quality control checks.

179.    Plaintiff's interactions with Defendant's website and its subpages, including his directional, selection, and clicking actions (using a finger), the display of information coming from Defendant and directed to Plaintiff, and Plaintiff's entry of text into search form fields, all were exchanges of electronic communications between Plaintiff and Defendant, and therefore constitute "contents" of electronic communications within the meaning of the Act.  Defendant's divulgence of the contents of Plaintiff's and Class Members' communications on Defendant's website to session replay technology was not authorized by 18 U.S.C. § 2511(2)(a)(i) in that it was neither: (1) a necessary incident to the rendition of the www.cabelas.com service; nor (2) necessary to the protection of the rights or property of Defendant.

4862-9371-6049, v. 1

180. Section 2517 of the ECPA relates to investigations by government officials and has no relevance here.

181. Defendant's divulgence of the contents of user communications on Defendant's browser through Session Replay Providers was not done "with the lawful consent of the originator or any addresses or intend recipient of such communication[s]." As alleged above: (a) Plaintiff and Class Members did not authorize Defendant to divulge the contents of their communications; and (b) Defendant did not procure the "lawful consent" from the websites or apps with which Plaintiff and Class Members were exchanging information.

182. Moreover, Defendant divulged the contents of Plaintiff and Class Members' communications through the Session Replay Providers to individuals who are not "person[s] employed or whose facilities are used to forward such communication to its destination."

183. The contents of Plaintiff's and Class Members' communications did not appear to pertain to the commission of a crime and Defendant did not divulge the contents of their communications to a law enforcement agency.

184. As a result of the above actions and pursuant to 18 U.S.C. § 2520, the Court may assess statutory damages; preliminary and other equitable or declaratory relief as may be appropriate; punitive damages in an amount to be determined by a jury; and a reasonable attorney's fee and other litigation costs reasonably incurred.

CLASS ACTION COMPLAINT

4862-9371-6049, v. 1

# FOURTH CAUSE OF ACTION

# VIOLATION OF TITLE II OF THE

# ELECTRONIC COMMUNICATIONS PRIVACY ACT

# 18 U.S.C. § 2701 *et seq.*

# (ON BEHALF OF PLAINTIFF AND

# THE CLASS AND CALIFORNIA SUB-CLASS)

185. Plaintiff incorporates all preceding paragraphs as though set forth herein.

186. The Stored Communications Act (hereinafter "SCA") provides a cause of action against any person who "intentionally accesses without authorization a facility through which an electronic communication service is provided," or any person "who intentionally exceeds an authorization to access that facility; and thereby obtains, alters or prevents authorized access to a wire or electronic communication while it is in electronic storage in such a system." 18 U.S.C. § 2701(a).

187. The SCA defines "electronic storage" as "any temporary, intermediate storage of a wire or electronic communication incidental to the electronic transmission thereof;" and "any storage of such communication by an electronic communication service for purposes of backup protection of such communication." 18 U.S.C. § 2510(17).

4862-9371-6049, v. 1

188.   The SCA defines an "electronic communications service" as "any service which provides to users thereof the ability to send or receive wire or electronic communications." 18 U.S.C. § 2510(15).

189.   Defendant intentionally accessed without authorization or intentionally exceeded authorization to access facilities through which an electronic communications services was provided when they used the instrumentalities described in this Complaint to access the Plaintiff's web-browsers and computing devices for purposes of tracking the Plaintiff's electronic communications as defined above and compelling communications of non-public content from Plaintiff's and Class Members' devices.

190.   The devices utilized by the Plaintiff and/or the web browsers on said devices provide electronic communications services to the Plaintiff because they "provide to users thereof the ability to send or receive wire or electronic communications." 18 U.S.C. § 2510(15).

191.   Plaintiff did not authorize or provide consent to the extent of the Defendant's access to Plaintiff and the Class's computing devices.

192.   Plaintiff's devices store information typed into the website, among other things.

193.   The Plaintiff's respective web browsers store information in browser-managed files on the Plaintiff's computing devices. These browsers are also facilities

CLASS ACTION COMPLAINT

under the SCA because they comprise the spyware necessary for and "through which (the) electronic communications service is provided."

194. Defendant intentionally accessed Plaintiff's web browsers without authorization when it embedded and used Session Replay Providers to access Plaintiff's browser and device immediately upon the Plaintiff's visiting Defendant's websites and after sign-up without obtaining the consent of the Plaintiff.

195. Plaintiff's computing devices are facilities under the SCA because they comprise the hardware necessary for and "through which (the) electronic communications service is provided."

196. By embedding and utilizing session replay technology, Defendant "intentionally accesse[d] without authorization a facility through which an electronic communication service is provided," or "intentionally exceed[ed] an authorization to access that facility", Defendant thereby obtained "access to a wire or electronic communication while it is in electronic storage in such a system." 18 U.S.C. § 2701(a).

197. Through the session replay technology embedded by Defendant, website users' website activities and communications are accessed within milliseconds of their occurrence, whether Plaintiff or class members intend to communicate them or not. For that reason, when Defendant accesses these facilities to acquire Plaintiff's electronic communications, it acquires profile information and

-63-
CLASS ACTION COMPLAINT

related just-transmitted electronic communications. Defendant acquires the profile information and related electronic communications out of electronic storage, incidental to the transmission thereof.

198. Plaintiff and Class Members were harmed by Defendant's violations, and pursuant to 18 U.S.C. § 2707(c), are entitled to actual damages including profits earned by Defendant attributable to the violations or statutory minimum damages of $1,000 per person, punitive damages, costs, and reasonable attorney's fees.

## FIFTH CAUSE OF ACTION

## VIOLATION OF TITLE II OF THE ELECTRONIC

## COMMUNICATIONS PRIVACY ACT

## 18 U.S.C. § 2702, *et seq.*

## (ON BEHALF OF PLAINTIFF AND

## THE CLASS AND CALIFORNIA SUB-CLASS)

199. Plaintiff incorporates all preceding paragraphs as though set forth herein.

200. The ECPA further provides that "a person or entity providing an electronic communication service to the public shall not knowingly divulge to any person or entity the contents of a communication while in electronic storage by that service." 18 U.S.C. § 2702(a)(1).

201. **Electronic Communication Service.** ECPA defines "electronic

-64-

CLASS ACTION COMPLAINT

communications service" as "any service which provides to users thereof the ability to send or receive wire or electronic communications."  18 U.S.C. § 2510(15).

202.   Defendant intentionally procures and embeds various session replay technology from a Session Replay Provider on its website to track and analyze website user interactions and communications with www.cabelas.com. Defendant's session replay technology from a Session Replay Provider on its website qualifies as an Electronic Communication Service.

203.   **Electronic Storage**. ECPA defines "electronic storage" as "any temporary, intermediate storage of a wire or electronic communication incidental to the electronic transmission thereof" and "any storage of such communication by an electronic communication service for purposes of backup protection of such communication." 18 U.S.C. § 2510(17).

204.   Defendant stores the content of Plaintiff's and Class Members' communications on Defendant's browser and files associated with it.

205.   Specifically, Defendant stores the content of Plaintiff's and Class Members' communications within Defendant's browser in two ways: (a) for purposes of backup protection so that if the browser inadvertently shuts down, Plaintiff and Class Members can be presented with the option to restore their previous communications; and (b) for a temporary and intermediate amount of time incidental to the electronic transmission thereof when it places the contents of a user

CLASS ACTION COMPLAINT
4862-9371-6049, v. 1

communications into the browser's web-browsing history, which is only kept on the browser for 90 days.

206. When Plaintiff or a Class Member makes an electronic communication, the content of that communication is immediately placed into storage.

207. Defendant knowingly divulges the contents of Plaintiff's and Class Members' communications through the session replay technology.

208. Prior to sending a communication to Defendant, Plaintiff temporarily stores information related to Defendant's website and Plaintiff's communications with the website that is obtained by Defendant's Session Replay Code and divulged to the Session Replay Provider.

209. **Exceptions Do Not Apply**. Section 2702(b) of the Stored Communication Act provides that an electronic communication service provider "may divulge the contents of a communication—"

a. to an addressee or intended recipient of such communication or an agent of such addressee or intended recipient."

b. "as otherwise authorized in Section 2517, 2511(2)(a), or 2703 of this title;"

c. "with the lawful consent of the originator or an addressee or intended recipient of such communication, or the subscriber in the case of remote computing

4862-9371-6049, v. 1

service;"

d.    "to a person employed or authorized or whose facilities are used to forward such communication to its destination;"

e.    "as may be necessarily incident to the rendition of the service or to the protection of the rights or property of the provider of that service;"

f.    "to the National Center for Missing and Exploited Children, in connection with a reported submission thereto under section 2258A."

g.    "to law enforcement agency, if the contents (i) were inadvertently obtained by the service provider; and (ii) appear to pertain to the commission of a crime;"

h.    "to a governmental entity, if the provider, in good faith, believes that an emergency involving danger of death or serious physical injury to any person requires disclosure without delay of communications relating to the emergency"; or

i.    "to a foreign government pursuant to an order from a foreign government that is subject to an executive agreement that the Attorney General has determined and certified to Congress satisfies Section 2523."

210.    Defendant did not divulge the contents of Plaintiff's and Class Members' communications to "addressees," "intended recipients," or "agents" of any such addressees or intended recipients of Plaintiff and Class Members.

211.    Sections 2517 and 2703 of the ECPA relate to investigations by

-67-
CLASS ACTION COMPLAINT

4862-9371-6049, v. 1

government officials and have no relevance here.

212.   Section 2511(2)(a)(i) provides:

It shall not be unlawful under this chapter for an operator of a switchboard, or an officer, employee, or agent of a provider of wire or electronic communication service, whose facilities are used in the transmission of a wire or electronic communication, to intercept, disclose, or use that communication in the normal course of his employment while engaged in any activity which is a necessary incident to the rendition of his service or to the protection of the rights or property of the provider of that service, except that a provider of wire communication service to the public shall not utilize service observing or random monitoring except for mechanical or service quality control checks.

213.   Defendant's divulgence of the contents of Plaintiff's and Class Members' communications on Defendant's website to Session Replay Providers was not authorized by 18 U.S.C. § 2511(2)(a)(i) in that it was neither: (1) a necessary incident to the rendition of the Chrome Service; nor (2) necessary to the protection of the rights or property of Defendant.

214.   Section 2517 of the ECPA relates to investigations by government officials and has no relevance here.

4862-9371-6049, v. 1

215. Defendant's divulgence of the contents of user communications on Defendant's browser through session replay technology was not done "with the lawful consent of the originator or any addresses or intend recipient of such communication[s]." As alleged above: (a) Plaintiff and Class Members did not authorize Defendant to divulge the contents of their communications; and (b) Defendant did not procure the "lawful consent" from the websites or apps with which Plaintiff and Class Members were exchanging information.

216. Moreover, Defendant divulged the contents of Plaintiff and Class Members' communications through the Session Replay Providers to individuals who are not "person[s] employed or whose facilities are used to forward such communication to its destination."

217. The contents of Plaintiff's and Class Members' communications did not appear to pertain to the commission of a crime and Defendant did not divulge the contents of their communications to a law enforcement agency.

218. As a result of the above actions and pursuant to 18 U.S.C. § 2520, the Court may assess statutory damages; preliminary and other equitable or declaratory relief as may be appropriate; punitive damages in an amount to be determined by a jury; and a reasonable attorney's fee and other litigation costs reasonably incurred.

## SIXTH CAUSE OF ACTION

### VIOLATION OF THE COMPUTER FRAUD

-69-
CLASS ACTION COMPLAINT

4862-9371-6049, v. 1

**AND ABUSE ACT (CFAA)**

**18 U.S.C. § 1030, *et seq*.**

**(ON BEHALF OF PLAINTIFF AND**

**THE CLASS AND CALIFORNIA SUB-CLASS)**

219. Plaintiff repeats and incorporates by reference all preceding paragraphs as if fully set forth herein.

220. The Plaintiff's and the Class's computer and/or mobile devices are, and at all relevant times have been, used for interstate communication and commerce, and are therefore "protected computers" under 18 U.S.C. § 1030(e)(2)(B).

221. Defendant exceeded, and continues to exceed, authorized access to the Plaintiff's and the Class's protected computers and obtained information thereby, in violation of 18 U.S.C. § 1030(a)(2), (a)(2)(C).

222. Defendant's conduct caused "loss to 1 or more persons during any 1-year period . . . aggregating at least $5,000 in value" under 18 U.S.C. § 1030(c)(4)(A)(i)(I), *inter alia*, because of the secret transmission of Plaintiff's and the Class's private and personally identifiable data and content—including the website visitor's Electronic Communications with the website, including their finger or mouse movements, clicks, keystrokes (such as text being entered into an information field or text box), URLs of web pages visited, and/or other electronic communication which were never intended for public consumption.

4862-9371-6049, v. 1

223. Defendant's conduct also constitutes "a threat to public health or safety" under 18 U.S.C. § 1030(c)(4)(A)(i)(IV), due to the private and personally identifiable data and content of Plaintiff and the Class being made available to Defendant, the third party vendor, and/or other third parties without adequate legal privacy protections.

224. Accordingly, Plaintiff and the Class are entitled to "maintain a civil action against the violator to obtain compensatory damages and injunctive relief or other equitable relief." 18 U.S.C. § 1030(g).

**SEVENTH CAUSE OF ACTION**

**STATUTORY LARCENY**

**CALIFORNIA PENAL CODE §§ 484 AND 496**

**(ON BEHALF OF PLAINTIFF AND THE CALIFORNIA SUB-CLASS)**

225. Plaintiff repeats and incorporates by reference all preceding paragraphs as if fully set forth herein.

226. California Penal Code § 496(a) prohibits the obtaining of property "in any manner constituting theft." California Penal Code § 484 defines theft:

> Every person who shall feloniously steal, take, carry, lead, or drive away the personal property of another, or who shall fraudulently appropriate property which has been entrusted to him or her, or who shall knowingly and designedly, by any false or fraudulent

representation or pretense, defraud any other person of money, labor or real or personal property, or who causes or procures others to report falsely of his or her wealth or mercantile character and by thus imposing upon any person, obtains credit and thereby fraudulently gets or obtains possession of money, or property or obtains the labor or service of another, is guilty of theft.

227.    California law therefore defines theft to include obtaining property by false pretense.

228.    Defendant intentionally employed a program that would obtain personal private information under a false purpose, through deception and without the knowledge of Plaintiff or the Class Members.

229.    Defendant stole, took, and/or fraudulently appropriated Plaintiffs' personal information without Plaintiffs' consent.

230.    Defendant concealed, aided in the concealing, sold, and/or utilized Plaintiffs' personal information obtained for Defendant's commercial purposes and the financial benefit of Defendant.

231.    Defendant knowingly and intentionally committed the acts wherein it obtained by false pretense personal information because Defendant intentionally deployed the code that tracked Plaintiffs' information and operated it in a manner that was concealed and/or withheld from Plaintiffs.

CLASS ACTION COMPLAINT

4862-9371-6049, v. 1

232.    Plaintiff and Class Members are entitled to recover the reasonable and fair market value of the unlawfully obtain personal data taken in violation of California Penal Code §§ 484 and 496.

## EIGHTH CAUSE OF ACTION

## VIOLATION OF THE UNFAIR COMPETITION LAW,  CAL. BUS. & PROF. CODE SECTIONS 17200, ET SEQ.

## (ON BEHALF OF PLAINTIFF AND THE CALIFORNIA SUB-CLASS)

233.    Plaintiff repeats and incorporates by reference all preceding paragraphs as if fully set forth herein.

234.    California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq.*, prohibits unfair competition – meaning any unlawful, unfair, or fraudulent business act or practice; any unfair, deceptive, untrue, or misleading advertising; and any act prohibited under Business and Professions Code 17500.

235.    Defendant's unlawful, unfair, and/or fraudulent business acts and practices, Defendants engaged in acts of unlawful and/or unfair competition prohibited by Business and Professions Code 17200 *et seq*. by virtue of the acts described herein, each of which constitutes an unlawful and/or unfair business practice.  The use of such unlawful and/or unfair business practices constitutes unfair competition within the meaning of Business and Professions Code 17200 *et seq*.

236.    The unlawful and/or unfair business practices committed by the

4862-9371-6049, v. 1

Defendants include, but are not limited to:

    a.    Committing trespass to chattels;

    b.    Committing conversion to chattels;

    c.    Committing civil trespass;

    d.    Violating California common law;

    e.    Violating federal and state statutory laws;

    f.    Violating the FTC;

    g.    Engaging in conduct in which the gravity of the harm to the Plaintiff and the Class outweighs the utility of the defendant's conduct;

    h.    Engaging in acts and/or practices and/or omissions that are immoral, unethical, oppressive, or unscrupulous and causes injury to consumers which outweigh its benefits;

    i.    Failing to disclose Defendant's practices prior to implementing Session Replay technology;

237. Each and every separate act constitutes an unlawful and/or unfair business practice. Each day that Defendant engaged in each separate unlawful act, omission, or practice is a separate and distinct violation of Business and Professions Code 17200.

238. As a direct and proximate result of the foregoing acts and practices, Defendants have received income, profits, and other benefits, which they would not

CLASS ACTION COMPLAINT
4862-9371-6049, v. 1

have received if Defendants had not engaged in the violations of the Unfair Competition Law described in this Complaint.

239.   As a direct and proximate result of the foregoing acts and practices, Defendants have obtained a competitive unfair advantage over similar businesses that have not engaged in such practices.

240.   Plaintiff has no adequate remedy at law in that damages are insufficient to protect the public from the harm caused by the conditions described in this Complaint.

241.   Unless injunctive relief is granted to enjoin the unlawful business practices of Defendants, Plaintiff, the Class, and the general public will suffer irreparable injury and damage.

242.   Plaintiff and the Class have suffered injury in fact as a result of Defendant's unlawful, unfair, and/or fraudulent acts and/or practices.

243.   Plaintiffs seek to enjoin further unlawful, unfair, and/or fraudulent acts or practices by Defendant, under Cal. Bus. & Prof. Code § 17200.

244.   Plaintiffs request that this Court enter such orders or judgments as may be necessary to enjoin Defendant from continuing its acts and/or practices which violate the UCL and to restore to Plaintiff and the Class and Subclass members any money Defendant acquired by unfair competition, including restitution and/or restitutionary disgorgement, as provided in Cal. Bus. & Prof. Code § 17203 and Cal.

CLASS ACTION COMPLAINT

4862-9371-6049, v. 1

Civ. Code § 3345; and for such other relief set forth below.

## NINTH CAUSE OF ACTION

## TRESPASS TO CHATTELS

## (ON BEHALF OF PLAINTIFF AND THE CALIFORNIA CLASS)

245.    Defendant wrongfully trespassed on Plaintiff's personal property, Plaintiff's device and the data contained thereon.

246.    Plaintiff owned, possessed, and/or had the right to possess Plaintiff device and/or the data contained thereon.

247.    Defendant intentionally interfered with Plaintiff's use or possession of the device and/or the data contained thereon.

248.    Plaintiff did not consent;

249.    As a result, Plaintiff was harmed; and

250.    Defendant's conduct was a substantial factor in causing Plaintiff's harm.

## TENTH CAUSE OF ACTION

## CONVERSION

## (ON BEHALF OF PLAINTIFF AND THE CALIFORNIA CLASS)

251.    Defendant wrongfully interfered with Plaintiff's personal property, Plaintiff's device and the data contained thereon.

252.    Plaintiff owned, possessed, and/or had the right to possess Plaintiff

CLASS ACTION COMPLAINT

4862-9371-6049, v. 1

device and/or the data contained thereon.

253.   Defendant intentionally interfered with Plaintiff's use or possession of the device and/or the data contained thereon in violation of Plaintiff's property rights as Plaintiff did not consent to said interference.

254.   As a result, Plaintiff was harmed; and

255.   Defendant's conduct was a substantial factor in causing Plaintiff's harm.

256.   Plaintiff seeks the return of Plaintiff's data.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff and the Class Members pray that judgment be entered against Defendant, and Plaintiff and Class Members be awarded damages from Defendant, as follows:

- Certify the Class and Subclass as requested herein;

- Appoint Plaintiff to serve as the Class Representative for the Class and Subclass;

- Appoint Plaintiff's Counsel as Class Counsel in this matter;

- Injunctive relief to prevent the further violations of California Penal Code § 631;

- An award of costs to Plaintiff; and

- Any other relief the Court may deem just and proper including interest.

CLASS ACTION COMPLAINT

4862-9371-6049, v. 1

**TRIAL BY JURY**

Pursuant to the Seventh Amended to the Constitution of the United States of America, Plaintiff and Class Members are entitled to, and demand, a trial by jury.

Respectfully Submitted,

Dated: <u>March 5, 2023</u>                    By:   <u>s/ Francis J. "Casey" Flynn, Jr.</u>

Francis J. "Casey" Flynn, Jr. #304712
**LAW OFFICES OF FRANCIS J. FLYNN, JR.**
6057 Metropolitan Plz.
Los Angeles, CA 90036
Tele: 314-662-2836
Email: casey@lawofficeflynn.com

MaryBeth V. Gibson**
** to seek admission Pro Hac Vice
**THE FINLEY FIRM, P.C.**
Piedmont Center
3535 Piedmont Road
Building 14, Suite 230
Atlanta GA 30305
Tele: (404) 978-6971
Facsimile: (404) 320-9978

*Attorneys for Plaintiff and the Proposed Class and Sub-Class*

-78-
CLASS ACTION COMPLAINT

4862-9371-6049, v. 1